Call our next case, Helen Mining v. James Elliot Mr. Pearson Good morning, I am Christopher Pearson and I represent Helen Mining Company, the appellant. I am reserving one minute rebuttal. The issue we are here to address today is the rebuttal provision set forth in section 718.305B of the regulations, which implement 921c4 of the Black Lung Benefits Act, and the issues whether they are valid as they apply to coal mine operators. Can you specify, just make it a little more clear for us, what exactly you are arguing? Is it that the presumption doesn't apply to operators at all? That the regulation is ultra-various to that extent? Is it that the rule-out standard is ultra-various in view of the statute or some other basis to make that argument? Right. First, Your Honor, we are not challenging the presumption. What we are challenging is the regulation applying limitations on rebuttal to coal mine operators that under the statute section of 921c4 limits to the secretary. Are you also arguing, though, we will come back to that point about application to the operators, but if we accept that it is valid as applied to operators, are you also challenging the validity of the regulation to the extent it adopts a rule-out standard? Yes, Your Honor. Okay. And what is the basis for that? Is that a plain language argument as to the statute? Yes. Sections of 901, 902 of the Black-Claw Act, there are definitional sections. They define total disability and they also, the regulations at 718.202 through 204, and specifically at 204, one of the elements is that disability has to be due to pneumoconiosis, and that is defined as, or you can establish disability due to pneumoconiosis if you can show that pneumoconiosis was a substantially contributing factor to the disability. That is the agency's interpretation of due to. Yes. And you don't challenge that as being a reasonable interpretation? No. But it's the same agency that's interpreting it in the context of the presumption as a rule-out standard? It's the same agency. However, the difference being is that under the provisions of the Act, they talk about that as an element of entitlement, that due to pneumoconiosis can be shown by a substantially contributing factor. So what we're challenging is that under 921C4, there's a 15-year presumption that is brought up by the statute, which means that if a minor can establish 15 years of coal mine employment and that they have a totally disabling respiratory impairment, that there's a rebuttable presumption that they have disability due to pneumoconiosis. The rule-out standard question, and I'd like the government also to be ready to address this, do we have any basis to reach that here where you seem to be arguing that the error which should have been applied was the other side of a substantially contributing factor standard test rather than the rule-out test, but the ALJ here seems to say repeatedly that that's just what he's doing, that he's basing a decision on a finding that experts failed to rebut the presumption that pneumoconiosis is a substantially contributing cause of the disability, and the government makes the point that the rule-out standard does not appear to have made a difference in this case. Are we then being asked to render an advisory opinion as to the validity of the regulation to the extent it deals with the rule-out standard? No, Your Honor. I have to concede that the judge's decision is rather convoluted on that issue. If you look at the decision, I believe it's on page 14, it actually does indicate that in order to rebut, and he looks at Section 718.305D, and also indicates that those rule-out standards are similar to other provisions of the Act. So if you look carefully at the decision, he is recognizing that under the regulations that the coal mine operator had to establish the rule-out standard. He talks about the substantially contributing cause of disability, and it's really not clear, but what he is saying is that that's the element of entitlement that the coal miner has to establish in order to be entitled to benefits, but that as a result of the presumption, the rebuttable presumption, that he didn't have to go through that analysis because he invocated the presumption. Let's go back to the question of the application of operators. Let me proceed with your argument as to that aspect of the regulation. Certainly. Again, the statute is 921C4. Under that section, the statute specifically states, well, first it invokes the presumption I already talked about, but then it goes to the rebuttal section, and it says the secretary may rebut such presumption by establishing, A, the miner did not have pneumoconiosis, or B, the pulmonary impairment did not arise out of or in connection with coal mine employment. Section 718.305 states, well, 305 gives you the presumption, 305D gives you the rebuttal, and it states that the party opposing entitlement may rebut by establishing pneumoconiosis or no part, there's no pneumoconiosis or no part of the total disabilities due to pneumoconiosis. And we've spent time looking at the statute and the regs, and so I think we've got a decent fix on how it's supposed to work. I'd like to direct your attention to the argument you're making that the Department of Labor was not free to go through notice and comment and rulemaking on this because the Supreme Court had cut all that off in its usury decision. That seems to be an argument you're making. Am I misunderstanding your argument? No, Your Honor. In fact, the Supreme Court in Usury v. Turner Elkhorn, they were reviewing an action brought by coal mine operators that were challenging a whole bunch of the provisions on the Blackland Benefits Act, the amended act, one of them being 921C4. And the lower court ruled that 921C4 was unconstitutional as it applied to the operators, but what the Supreme Court said was that the lower court erred because they never needed to get to the constitutional question because looking at the statute, it was clear that Congress intended that that rebuttal on the limitation in 921C4 was inapplicable to the operators. Okay, so we take that as true, that that's what usury actually says on page 35 of the reported opinion. What does that say, if anything, about the department's power to engage in independent rulemaking by notice? Not interpretation of the statute, but independent rulemaking by notice and comment. Because that's what, I'm going to ask the department the same question, but that appears to be right out of the box in their brief. They say, we went through notice and comment, we made a rule, this is the rule. So how does it advance your case to say, yeah, but the Supreme Court said the statute doesn't say that. Fine, the statute doesn't say that, but the regulation does. How do you get around the regulation? Well, but the regulation is inconsistent with the clear intent and meaning of the statute. But the Supreme Court didn't say it's inconsistent with the intent and meaning of the statute. All the Supreme Court said was, by the terms of the statute, the statute applies to the secretary. It didn't say the Department of Labor can never, by rulemaking, take this standard, and if it chooses to, apply it to operators, did it? Well, if the original action in usury was brought by operators, and they were challenged... The issue was the statute. Correct. Okay, but now the issue is the regulation. What is it about usury that you think prevents the Department of Labor from acting through its rulemaking authority to take a standard and apply it to operators, even if that standard happens to be the same one that the statute applies to the secretary? Definitely an agency has the power to fill in gaps where Congress has left them. Sometimes they do it intentionally because it's very complicated, and they want the agency to take care of it, or they just are ambiguous. I think in this case, though, it's pretty clear that by usury, their opinion is not that the Congress was vague or ambiguous. They specifically address rebuttal in this situation. In fact, in some of the other ones, 921C1, 921C2, and 921C3, those are other presumptions. They don't address rebuttal at all in that situation. I apologize if I'm not being clear because I've been known to be less than clear on occasion. But I'm trying to get you to meet the department's argument that regardless of what usury says, usury doesn't even purport to say that the secretary can't engage in, through a proper rulemaking process, the establishment of a standard that will be applied to operators. The fact that that standard mirrors the one applied to the secretary, that's not something that usury cuts off, and it didn't purport to cut it off. That's the argument I think they're making, and I'll ask them. They can straighten me out if I'm wrong. But if that's true, what's wrong with, why can't the secretary of labor do that? What is it about usury that you think says, You can't go through independent rulemaking and come back here to the same standard that applies to the secretary. Yes, Your Honor. Under the way the statute works is that benefits are payable either by the secretary or a private coal mine operator depending upon the circumstances. So you had two parties that could be liable for payment of benefits depending on the circumstances, and the statute gives a presumption which, depending on the circumstances, either the secretary or the coal mine operator would be responsible under that presumption. Then they get to rebuttal, and they talk about the rebuttal, and they don't state that that rebuttal applies to the operator. I take it you're making a Chevron step one plain language argument. The plain language of the statute forecloses the regulation applying the presumption to operators. That's right. It's our position that the government hasn't met the first step of Chevron. If we disagree with you, if we conclude that the face of the statute, even with usury, is silent or ambiguous, at that point does the government prevail? You're asking me whether there would be a problem on the second step about permissible construction of the statute? I think yes. If we get past the second one, I believe that there's been an interpretation that the rule out, section 723 was another one, Klein and Flesch, cases in the Third Circuit have talked about, that if it's silent or ambiguous, that that is an appropriate limitation on operators. So we are at the step one, and it is 921C4. You don't dispute the reasonableness of the regulation if we get past step one? Not based on the case law that's out there, no. If you get beyond step one. Step one is your whole battle group? Yes, Your Honor. Okay. And to the extent that you are making an argument as to the rule out test itself, is that something that you, can you articulate that as being a step one, a step two argument? What is the argument you're making as to why the rule out standard, in the context of the presumption, is invalid on the face of the statute, or is unreasonable? It's unreasonable, Your Honor, because in the context of the statute, the element of entitlement is that pneumoconiosis is a substantially contributing factor. They're raising the bar in the rebuttal provision of 921C4, and then placing it upon only the secretary and not operators in that particular section. Okay. Thank you very much, Mr. Pearson. We'll have you back on rebuttal. Mr. Long for Mr. Elliott. Thank you, Your Honor. My name is Heath Long, and I represent the respondent, James Elliott, senior in this case. And as you may be aware, typically in cases where I share time with a federal respondent, I handle the fact-specific or medical issues such as were raised in the first two issues of the brief. But when we receive the indication from the court that we should just stick with validity, we split the time so that the solicitor had a lot more time to discuss that. I would like to bring several items to the court's attention, though. This issue has been decided in both the sister courts of the Fourth Circuit and the Sixth Circuit. Bender case in the Fourth Circuit is particularly well-drafted. It goes through a very long history of all the different pacts and the regulations that have been imposed after those different time periods because they've changed depending upon political sways and norms through the 1980s into the 2000s. Additionally, Your Honor, and I believe Judge Crouse, you authored this opinion, the Third Circuit in a case called Consol Energy v. Sweeney actually applied the rollout standard to operators, didn't get to the underlying validity of the regulation, but did apply it nonetheless. And I believe there's a case called Gowoski that was very much decided in the same way. The administrative law judge in this case, Judge Swank, I think you hit the nail on the head, but he bounced back and forth between the rollout standard and then talking about substantial contributing factor. In the end, what did he apply? At the very end of the case, he does say substantial contributing factor, which is odd because he probably does 50, 75 decisions a year and he knows better. So I think it was just an error because he does mention the rollout standard several times throughout the decision also. So I think it was inadvertent. So it was inadvertent. You think he was actually applying the rollout standard. That's what he was intending to apply and that's what he was intending to say, so we do have to address this. Yes, and I do think that even if he did apply the substantial contributing factor, it's actually a higher bar. If anything, he was going overboard in the decision just to strengthen the position. Well, this is a significant point because if he was applying a substantial contributing factor test, it is a higher bar and perforce he would have made the same decision as the rollout. So if he applied the higher bar, we wouldn't have cause to get into this, right? That's correct, sir. It's not a rhetorical kind of musing here. It's like a serious question. Your position on behalf of your client is, no, we've got to get at the validity of this regulation because the ALJ actually was applying the rollout standard and just misspoke at the end in speaking in terms of substantial contributing factor. That's the position Mr. Elliott is taking. That is. Do you disagree with the government's assertion in footnote 19 of its brief that it's unlikely the rollout standard played any role in the outcome of the decision? I read that. I respect Attorney Pikosky's expertise in this matter, but I was there at the case. I'm familiar with Judge Swank's rulings. He normally and he routinely has always applied the correct standard, and it appears that throughout the decision in order, it's fairly lengthy, he did apply the correct standard. It just looks like he inserted that at the very end. I think he misspoke. Any other questions, Your Honor? No, thank you very much, Mr. Long. Mr. Pikosky. Thank you, Your Honors. May it please the Court, my name is Sean Pikosky. I represent the Department of Labor's Office of Workers' Compensation Programs, which is the agency that administers the Black Lung Benefits Act and promulgated the regulation that Helen Mining is attacking. I would like to start, I think, by addressing Judge Krause's question about whether the Court needs to resolve the rollout standard question in this case. As we said in our brief, we think that the Court probably could craft an opinion that did not require you to make a decision on whether or not this part of the regulation is appropriate exercise of the Department's discretion. But if this Court goes on to address the various evidentiary challenges that the employer made, it would presumably be helpful to actually set out the legal standards that the evidence would have to meet, which would include the rebuttal standards. And certainly if the Court elected to remand the case for further proceedings, to give the ALJ some guidance about what standards to apply, which in our view would include the regulatory rollout standard. Does that adequately answer your question? Well, you've just taken a different reading of the ALJ's decision. Let me ask you another way. In terms of what we are reviewing, are we looking to the ALJ or is what's presented to us the standard articulated and applied by the Board? Does that make a difference as to whether we have cause to reach this issue? Well, this Court reviews the Board decision rather than the ALJ decision, but the Board's legal findings aren't entitled to any deference by the Court. And I don't think the Board held, well, I think if I recall correctly, the Board held here that the ALJ's misapplication or arguable misapplication of the rebuttal standards was harmless. It didn't affect the outcome of the case. So I don't think there's a, I don't think that the, you know, the fact that the, I don't think the Board, the existence of the Board decision changes whether or not you decide to address the rollout standard issue in your decision. You've argued it's harmless. It's your recollection from the record that the Board identifies the ALJ as applying the wrong standard and then discusses it as being harmless? Can you just one second pull up? I know that the Board addresses the fact that, oh, my apologies. The Board addressed the fact that the ALJ didn't consider the first rebuttal method, which is to prove that the minor didn't have pneumoconiosis in the first place. The Board considered that to be harmless there. My apologies. It did not say that the failure to consider the second method of rebuttal, the rollout standard, was harmless there. The Board seems to assume the ALJ was applying the rollout standard. It doesn't address the issue of the fact that while the ALJ at the beginning of the decision purports to, you know, when it's quoting the standards in general, applies the rollout standard, but then when it gets to the actual discussion of whether or not the medical evidence establishes rebuttal, uses the substantial contributing cost factor. Can I ask you about the approach the government has taken here? At one point in your briefing, you note that the Department acted after notice and comment rulemaking, and you seem to embrace the idea that this was rulemaking and we're entitled to do that. In other places, you kind of push the idea that you're interpreting the statute. How could this be a correct interpretation of the statute in light of what the Supreme Court said in usury? It said in footnote 40, it follows from our discussion of the section 411C4 limitation on rebuttal that these regulations cannot stand as authoritative administrative interpretations of the statute itself. Maybe I misread your brief, but it sounded like you were trying to say, no, this is all just an interpretation of the statute. How can that be in the face of what the Supreme Court said in that footnote in usury? The answer is that the Supreme Court in usury and the sentence, the sort of rebuttal limiting sentence in the section 921C4, that's not the source of the rule. That's an entirely separate limitation. You can recall at the time 921C4 was enacted and when usury was issued, only what we now call clinical pneumoconiosis was compensable under the Act. As the Supreme Court explained in usury, what that sentence did was, it did limit the Secretary's ability to rebut the presumption, but it did so in a very particular way, that the Secretary of Labor was not allowed to rebut the presumption by proving that this person had mild clinical pneumoconiosis, but their disability was entirely due to some other disease that was caused by dust. That's what we were not allowed to do there, and I think if we enacted a regulation that allowed us to do that in a case where the old definition of clinical pneumoconiosis governed, then that would be a problem. I'm just wondering why you don't just wholeheartedly embrace your rulemaking authority. It's not usual for an agency to be shy about that, and I'm wondering what's going on. Why isn't your primary and sole position simply, we're allowed to do this, and we went through the steps to do it, and we're allowed to adopt this standard, and that's that.  and claiming that there's some sort of interpretive thing associated with the statute, as opposed to saying, we went in chevron step one. There's a gap. We're entitled to fill it. In fact, we're directed to fill it. We did it. With due respect, I thought that's what we did argue, that our statutory analysis, our analysis of the Ussery issue, is designed to show that this is a gap, that Ussery doesn't answer this question, and I think that the Fourth Circuit at Benner did a good job of explaining that. Ussery explains, or that Ussery in the last sentence of 921c4, they explain what elements of entitlement are sort of out there available to rebut, but not what you need to prove to establish rebuttal under any of those particular elements. Now, everyone agrees that disability causation is an element, and that you can rebut by disproving it. The statute is completely silent on what you need to show to do that. It's completely silent on whether private employers and the Department of Labor or back then the Department of Social Security should have different standards for doing that. So, yes, that's the gap that existed, and the gap was filled with the rule-of-law standard. Well, you say it's silent, but why shouldn't we take from the Supreme Court's language in a Ussery the negative implication that it doesn't apply to operators? Why isn't the Supreme Court's commentary, the Court reads the plain language of c4, and in particular the reference to the Secretary, to mean that the limitation applies only to the Secretary and not to an operator seeking to avoid liability? I think that, I apologize if I'm not being clear, that limitation does not apply to operators. It's the limitation they're talking about in Ussery and the limitation in the last sentence of the statutory section. That does not apply to operators. It didn't apply to operators back then. It wouldn't apply to operators now. But that's not where the rule-of-law standard comes from. The rule-of-law standard is a different issue. What that sentence says is that the Secretary of Labor can't rebut a claim by saying, yes, this minor has mild clinical pneumoconiosis, and yes, they're totally disabled, and yes, the total disability is caused by a disease that in turn was caused by coal dust exposure, but nevertheless we should win because that disease isn't pneumoconiosis. Employers could do that. The Secretary could not. Between 1972 and 1978. Now in 1978 when the definition of pneumoconiosis was expanded so that every disease that's caused, every lung disease that's caused by dust exposure in coal mine employment is now pneumoconiosis. So that particular limitation that exists in the statute and was discussed in Ussery is now irrelevant, unless there's some case out there that's so old that the old definitions would still govern it. Is there anything in assuming, if we are to follow the Fourth and Sixth Circuit here, is there anything in the Bender opinion itself that in the government's view requires, is an error or requires further clarification? Anything in Bender? I think not. I think Bender got the analysis basically right. I think it closely tracks our arguments in the case, and I think closely tracks our arguments to you in this case. I think Bender is the correct analysis. Thank you. Okay, thank you. Mr. Pearson, your rebuttal, please. Thank you. The only thing I have in rebuttal is there was discussion that because the act was amended to change the definition of pneumoconiosis from strictly the medical pneumoconiosis to any chronic lung disease arising out of coal mine employment, that doesn't really eliminate the concerns about the limitations on rebuttal, because what that would do when they amended the act was sort of collapse elements one and two, pneumoconiosis and arising out of coal mine employment. It doesn't really change the fact that in order to be entitled to benefits, that you have to establish the disabilities due to pneumoconiosis. And it's really that element of entitlement that we're talking about with the presumption and the limitations on rebuttal. Okay, thank you very much, counsel. We appreciate everybody's argument. I will take the matter under advisement in recess court.